## Prestonsburg Superior Oil Gas Company v. Vance, et al.

(Decided June 8, 1926.)

### Appeal from Floyd Circuit Court.

1. Gas—Testimony as to Cause of Gas Explosion Causing Fire Held Sufficient to Take Question of Negligence to Jury.—Testimony of gas company's servants that explosion causing fire occurred while they were connecting meter after removing plug from gas line without turning off gas held sufficient, together with fact of explosion, to take to jury question of company's negligence, though

they testified that they struck no matches and did nothing to cause explosion.

2.  Gas—Failure of Occupants of House to do More in Belief Fire from Gas Explosion was Extinguished by Them. Held Not Conclusive Proof, Fire was Entirely Extinguished.—Reasonable care by occupants of house to extinguish fire caused by gas explosion was all that law required of them, and their failure to do anything more in belief that fire was entirely extinguished was not conclusive proof of such fact in action against gas company for destruction of house by fire subsequently discovered.

3.  Gas—Whether Fire was Result of Explosion Caused by Gas Company's Negligence Held for Jury.—Whether fire which destroyed building was direct and proximate result of explosion caused by negligence of defendant gas company's servants about 10 hours before fire was discovered held for jury.

4.  Evidence—Admission of Testimony as to Statement by Gas Company's Servant Two or Three Months After Explosion that Coworker Lighted Match Held Reversible Error; Master Not Being Bound by Servant's Admissions Unless Part of Res Gestae.—In action against gas company for destruction of house by fire, admission of testimony that defendant's servant told witness two or three months afterward that coworker lighted match to test pipe joint, whereupon explosion occurred, held reversible error; master not being bound by his servant's admissions unless part of res gestae.

5.  Damages—Measure of Damages for Destruction of Building by Fire is its Fair and Reasonable Value When and Where Destroyed. —Measure of damages for destruction of building by fire is not market value of building, which has no such value apart from ground on which it stands, but its fair and reasonable value when and where destroyed.

6.  Evidence—Testimony as to Size of Building Destroyed by Fire, Kind and Quality of Material in it, its Age, Wear and Tear, State of Repair, Location, and Surroundings, etc., is Admissible on Question of Value, which Qualified Witness, Taking all Such Facts into Account, May Fix.—On question of fair and reasonable value of building when destroyed by fire, testimony as to its size, kind and quality of material in it, its age, wear and tear to which subjected, its condition, location, and surroundings, and all similar pertinent questions, is admissible, and qualified witness may fix such value by taking all such facts into account.

7.  Evidence—Testimony as to What House Would Cost when Burned, Based on Judge's Statement that Measure of Damages was Reconstruction Cost or Market Value with Cost of Replacement, and that if Market Value was Equal to Replacement Cost, that Would be Same Criterion, Held Incompetent.—In action for destruction of house by fire, testimony as to what house would cost when burned, based on judge's statement that measure of damages was cost of reconstruction or market value, coupled with cost of replacement, and that, if market price was as much as such cost,

that would be same criterion, was incompetent on issue of fair and reasonable value of house when destroyed.

8. Appeal and Error—Error in Permitting Filing of Amended Petition, and Excessiveness of Verdict, Need Not be Considered where Judgment Must be Reversed for Admission of Incompetent Evidence.—Whether court erred in permitting plaintiffs to file amended petition, increasing amount sued for, at conclusion of evidence, and whether verdict for them was excessive, need not be considered, where judgment must be reversed for admission of incompetent evidence and case retried.

9. Damages—Jury Should be Instructed to Find, Not Merely "Reasonable Value" of House at Time of Destruction by Fire, but "Fair and Reasonable Value" at Such Time and Place.—In action for destruction of house by fire, jury should be instructed to find from evidence the "fair and reasonable value" of house at time and place of destruction, not merely its "reasonable value" at such time.

10. Negligence—Court Should Define "Negligence," Though Instruction Defining it was Not Offered.—Court should define "negligence," as used in instructions in action for destruction of house by fire, though no instruction defining term was offered nor any complaint made that it was not given.

JOSEPH D. HARKINS for appellant.

C. B. WHEELER for appellees.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE— Reversing.

The appellees, George W. and Dewey Vance, recovered judgment for $2,500.00 against appellant, Prestonsburg Superior Oil Gas Company, in the Floyd circuit court in an action by them against it for damages resulting from a fire which destroyed their dwelling house, alleged to have been the result of its negligence. Hence the appeal.

Appellant's chief ground for reversal is that the trial court erred in not directing a verdict in its favor at the close of the evidence. The facts are these: Appellant supplies natural gas to the city of Prestonsburg. Appellees owned a dwelling house within that city. They had applied for gas service and servants of appellant were engaged in piping the residence and installing the meters. It was necessary to install two meters because the first and second floors of the residence were occupied by different families. A single line of pipe from the gas main in the street carried the gas to the basement of the residence. By the use of a tee joint the gas was led from

it through separate lines and meters to the two apartments. All connections had been made to the upstairs apartment. Nothing remained to be done to complete the piping to the first floor apartment except to make the connection at the tee. A plug was unscrewed from the tee, and, while the connection to it was being made, an explosion occurred which shook the house considerably and burned the three workmen engaged in making the connection, one of them very painfully and severely. In the excitement which followed it was discovered that a fire had ignited in the room immediately over where the explosion occurred. The two workmen who were not so severely injured and others who had responded to the alarm threw water on and put out the fire. There is a difference between the testimony for appellant and that for appellees as to the extent to which the fire had ignited and burned before it was put out. The witnesses for appellant testified that the fire was confined to some loose newspapers which were in the floor of the room immediately above where the explosion occurred. The testimony for appellees tended to establish that the fire also ignited and burned part of the canvas and paper on one wall and on the ceiling. Everybody present thought that all of the fire was extinguished. There is quite a variance in the testimony as to when the explosion occurred, some of the witnesses estimating the time as early as three o'clock in the afternoon, while others place it as late as five p. m. We feel safe in assuming that it was about four o'clock p. m.

Appellee, George W. Vance, occupied the first floor apartment and was away from home at the time the explosion occurred. He returned, however, about seven o'clock and, of course, examined the premises and satisfied himself that the fire had all been extinguished. He and his family retired about nine-thirty o'clock. Mr. C. B. Wheeler and his wife occupied the second floor apartment, and they appear to have just moved into it and not then to have finished the placing of their furniture and household effects. They were both in their apartment when the explosion occurred, and both were present and took part in what was done to extinguish the fire discovered shortly after the explosion. Between that time and the time when they retired for the night they appear to have gone several times to the part of the house affected by the explosion and fire to assure themselves that it had all been extinguished. They remained up until eleven-

thirty or twelve o'clock that night, and immediately before retiring descended to the first floor of the building and went again into the room where the fire had been to see that it had not broken out afresh. Observing no signs of fire they returned to their apartment and retired.

At approximately two o'clock the inmates of the house were awakened to discover that it was afire and the fire then was so far advanced that they were able to escape only in their night clothing and were unable to save from the building any of its contents. The testimony all establishes that the fire when discovered was in that portion of the house beneath which the explosion had occurred in the afternoon and in which the fire, discovered immediately after the explosion, had ignited.

Appellant does not seriously contend that there was not sufficient evidence to make it a question for the jury whether the explosion at four o'clock in the afternoon was the result of its negligence. Appellant's servants who were doing the work testified that the explosion occurred after they removed the plug from the gas line and while they were connecting it with the line to the meter. They admitted that they did that without having turned off the gas and while the gas at full pressure was in the lines. These facts and the fact of the explosion were sufficient to take the case to the jury on the question of appellant's negligence, regardless of the further testimony by its employees that they did not strike any matches or do anything to cause the explosion. The circumstances here are very much the same as in Louisville Gas Company v. Guelot, et al., 150 Ky. 583, 150 S. W. 656, where under authority of Smith v. Boston Gas Company, 129 Mass. 318, it was held that a *prima facie* case of negligence on the part of the gas company was made.

Appellant bases its right to have had a directed verdict at the close of the testimony upon the contention that there is a total absence of proof in the record that the fire which occurred at approximately two o'clock at night which destroyed the residence was the direct and proximate result of its negligence, if such be conceded, which caused the explosion and fire in the afternoon. The argument for it is that since everybody present, including appellee, who occupied the lower apartment, and Wheeler, who occupied the upper apartment, threw water on and extinguished all the fire visible and threw water into the walls of the building where it was thought possible fire might have ignited and satisfied themselves thor-

oughly that all the fire caused by the explosion had been extinguished, that all of it was extinguished; and that the fire which ignited later destroyed the dwelling house came from some other cause. The evidence, however, discloses that the heat from the explosion was sufficient to inflict severe and painful burns upon one of the workmen engaged in putting in the gas connection. It was sufficient to ignite a fire among the papers stored in a room above where the explosion occurred and the canvas and paper on the wall of that room. After the discovery of that fire appellees and all persons present appear to have used every reasonable means to minimize the damages for which apellant was responsible as a result of its negligence. They all used reasonable care to extinguish the fire then discovered to have been ignited. In so doing they appear to have done all that the law required of them. (See Hogle v. New York Central, etc., Railroad Company, 28 Hun. (35 N. Y. Sup. Ct.) 363, and the cases therein cited; Farrell v. Minn. & R. R. Ry. Company (Minn.), 141 N. W. 491, and the cases therein cited; and Talley v. Courter, 93 Mich. 473.) According to the testimony of appellant's servants the fire which ignited among the newspapers on the floor of the room above where the explosion occurred caught from the heat of the explosion through a knot hole in the floor. The fire which ignited the canvas and paper on one wall of the building could have been ignited only from the heat of the explosion forced from the basement up between the studding of the partition wall between the two rooms. The fire igniting in those two places from the heat of the explosion was open and obvious. No examination was made between the walls of any of the rooms over the basement where the explosion occurred. The igniting of the gas with the consequent immediate, intense heating and expanding of the atmosphere it permeated caused the explosion which forced this intense heat along the line of least resistance into all of the surrounding openings. While appellee, and Mr. Wheeler, who occupied the second floor apartment, and the servants of appellant who were present, appear to have exercised ordinary care to extinguish all the fire, the fact that they did nothing more in the belief that the fire had all been extinguished is not conclusive proof that the fire was all extinguished; and this court has concluded that, in view of the explosion and consequent fire late in the afternoon, and the place where the explosion occurred,

and the possible places disclosed by the evidence within the walls of the building where fire might have ignited and smouldered or remained inactive for hours before breaking into active flames, it was a question for the jury, whether the fire which destroyed the building was the result of the explosion. Under the facts of this case we can not sustain appellant's contention that it was entitled to a directed verdict.

It is insisted for appellant that the judgment herein must be reversed for incompetent testimony admitted over its objection. That point is well taken. 'While testifying for appellee, C. B. Wheeler, over the objection of the appellant, was permitted to testify that Clarence Hale, one of appellant's servants, who was installing the gas fixtures when the explosion occurred, told him some two or three months after the explosion and again about three weeks before the trial that one of the men working with him lighted a match to test a joint in the pipe, and when he did so the explosion occurred. That was admitted by the trial court as substantive evidence of negligence upon the part of appellant. No rule of evidence is better established in this jurisdiction than that a master or a principal is not bound and can not be affected by admissions of his servant or agent unless part of the *res gestae*. L. & N. R. R. Company v. Moore, 150 Ky. 692; I. C. Ry. Company v. Houchins, 121 Ky. 526; I. C. R. R. Company v. Winslow, 119 Ky. 877; C. & O. R. R. Company v. Reeves' Admr., 11 Rep. 14; L. & N. R. R. Company v. Webb, 99 Ky. 332; Parker's Admr. v. Cumberland Telephone Company, 25 Rep. 1391; Louisville Ry. Company v. Johnson's Admr., 131 Ky., 277; C. & O. Ry Company v. Walker's Admr., 159 Ky., 237; South Covington & Cincinnati Ry. Company v. Goldsmith, 187 Ky. 68.

The testimony of Jonathan Fitzpatrick and Jim Owens, which the trial court permitted to be heard by the jury but which was subsequently withdrawn as being incompetent, was incompetent, and upon another trial will not be permitted to go to the jury.

While the witness, B. P. Carter, was being interrogated as to the value of the residence destroyed, objection was interposed by defendant to the questions propounded upon the theory that a false standard of measurement was being given to the witness: The court interfered, and from the bench gave the following as the correct standard by which the witness could testify

as to the damages resulting from the destruction of the house: "The cost of reconstruction or market value, coupled with what it would cost to replace it, couple it together, and if it would bring as much on the market as it cost to replace it, that would be the same criterion, the replacing of the house." The attorney then stated to the witness: "Use the statement given by the judge and answer it, what the house would cost at the time it was burned in 1921?" The witness answered: "I would put it about $7,000.00." As reference to I. C. Railroad Company v. Nuckols, 212 Ky. 564, and the cases therein cited will disclose, when a building has been destroyed by fire the measure of damages is not the market value of the building destroyed, because a building apart from the ground on which it stands can not be said to have a market value, but is the fair and reasonable value of the building destroyed as it was when and where destroyed. As bearing on the question of the fair and reasonable value of the building, it is proper to admit testimony as to its size and dimensions, the kind and quality of the material of which it was constructed, the length of time it had been built, the amount of wear and tear to which it had been subjected, its condition or state of repair or disrepair at the time of its destruction, its location and surroundings and all similar, pertinent questions. Taking all these facts pertaining to the fair and reasonable value of the building at the time it was destroyed into account, witnesses qualified to do so may fix the fair, reasonable value of the building as it was when destroyed for the benefit of the jury. The testimony of the witness, given under the criterion fixed by the court herein, could have been of no value to the jury in forming an opinion as to the fair and reasonable value of the building destroyed.

Appellant complains of the action of the trial court in permitting appellees to file an amended petition increasing the amount sued for at the conclusion of the evidence. Since the judgment will have to be reversed for the admission of the incompetent evidence above mentioned, it is unnecessary to consider that question. Appellant, upon another trial, will have ample opportunity to present such evidence as it can that appellees were not damaged in the amount claimed by the amended petition.

Appellant insists that the verdict for appellee was excessive. In view of the fact that the case must be

tried again, we deem it unnecessary to determine that question.

Appellant complains of the instruction on the measure of damages given herein. We find, however, that it in all essentials accords with the views of this court as hereinbefore expressed. However, since the case must be reversed for the other reasons given, upon another trial, instead of directing the jury that if they find for plaintiff they will find from the evidence the "reasonable value" of the house destroyed at the time of its destruction, they will be instructed to find from the evidence the "fair and reasonable value" thereof at the time and place destroyed. Though no instruction was offered and no complaint is made that it was not given, in addition to the instructions given the trial court will, upon another trial, define "negligence" as used in the instructions of the jury.

For the reasons indicated, the judgment herein is reversed and the cause remanded for further proceedings consistent herewith.